**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NEVA JUSTICE, | ) | Civil Action No. |
| | ) | |
| *Plaintiff*, | ) | Filed Electronically |
| | ) | |
| v. | ) | |
| | ) | |
| D&D FAST FOODS, INC. d/b/a SUBWAY, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Neva Justice, by and through the undersigned counsel, files the following

**THE PARTIES**

1.      Plaintiff, Neva Justice ("Plaintiff"), is an adult individual who resides in Martins Ferry, Ohio 43935.

2.      Defendant, D&D Fast Foods, Inc. d/b/a Subway ("Defendant"), is, upon information and belief, a West Virginia corporation with a registered address of 200 Didriksen Drive, Triadelphia, West Virginia 26059. Defendant's principal place of business is located at the same address. The Plaintiff reported to work on a regular basis at Defendant's Subway franchise location in Martins Ferry, Ohio (the "Facility").

**JURISDICTION AND VENUE**

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331.**

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and the Fair Labor Standards Act, 29

U.S.C. § 201, *et seq.* (the "FLSA").

4.     Plaintiff exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which assigned Charge No. 532-2026-00789 to Plaintiff's claims arising under Title VII and the ADEA.

5.     On December 22, 2025, the EEOC issued Plaintiff a Notice of Right to Sue with respect to her Title VII and ADEA claims, thereby satisfying all administrative prerequisites to filing this action.

6.     Plaintiff filed this action within ninety (90) days of receiving the EEOC's Notice of Right to Sue.

7.     Plaintiff's claims under the FLSA arise under federal law and do not require exhaustion of administrative remedies prior to filing suit in federal court.

**B.     The United States District Court for the Southern District of Ohio is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

8.     Venue is proper in the United States District Court for the Southern District of Ohio, Eastern Division (hereinafter, the "Southern District") as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

9.     Specifically, these events and omissions occurred within Belmont County, Ohio, which is one of the counties encompassed by the Eastern Division of the Southern District.

10.     Plaintiff reported to work at Defendant's Subway franchise location in Martins Ferry, Ohio, where the unlawful conduct alleged herein occurred.

11.     This matter is properly before the Eastern Division of the Southern District given the conduct complained of herein arose in Belmont County, Ohio.

2

**C.      This Court May Exercise Personal Jurisdiction Over Defendant.**

12.      This Court may exercise personal jurisdiction over Defendant pursuant to Ohio's long-arm statute, Ohio Rev. Code § 2307.382, and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

13.      Defendant conducts business in Ohio, operates the Facility where the events giving rise to Plaintiff's claims occurred, and maintains sufficient minimum contacts with the State of Ohio such that the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

**ADMINISTRATIVE PREREQUISITES**

14.      Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(d) and may now proceed to bring this action before the Court. Specifically:

a.   On or about November 24, 2025, Plaintiff dually filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for her claims arising under Title VII and the ADEA at charge number 532-2026-00789 (the "EEOC Charge") and with the Ohio Civil Rights Commission seeking redress for the same claims.

b.   The EEOC Charge alleged discrimination based on Sex, Retaliation, and Age.

c.   On December 22, 2025, the EEOC issued the Notice of Right to Sue ("RTS Notice"), signed by Karen McDonough, Acting Director, affording Plaintiff 90 days within which to timely file her claims under Title VII and the ADEA.

d.   The instant complaint is filed within the 90-day time period.

3

## FACTUAL BACKGROUND
### Employment Details

15. Plaintiff began her employment with Defendant in late May 2024 as a Sandwich Artist at Defendant's Subway franchise location in Martins Ferry, Ohio (the "Facility").

16. Plaintiff's duties included preparing sandwiches, providing customer service, stocking supplies, performing cleaning tasks, and other food preparation duties.

17. Plaintiff was compensated at the rate of $10.70 per hour and consistently worked approximately 30 hours per week.

### Sexual Harassment and Hostile Work Environment

18. Beginning in approximately September 2024, Plaintiff became the target of severe and pervasive sexual harassment by her coworker, Eric (last name unknown) ("Eric"), age 49.

19. Eric's conduct included, but was not limited to, attempting to walk in on Plaintiff while she was using the restroom, making sexually suggestive comments such as asking if he could "help" or "come" with her to the bathroom, and making other unwelcome remarks and physical advances.

20. This harassment was not an isolated incident but a continuous pattern of behavior that persisted throughout Plaintiff's employment.

21. Defendant had prior knowledge of Eric's propensity for sexual harassment, as another young female employee, Remy, was forced to quit her job due to Eric's sexual harassment after her mother's complaints to management also went unaddressed.

### Complaints to Management and Deliberate Indifference

22. Plaintiff immediately reported Eric's harassment to her direct supervisor, Manager Veronica Ignacak ("Ignacak"), in September 2024.

23. When the harassment continued, Plaintiff made numerous subsequent reports to

4

Ignacak throughout September, October, and November 2024, and continued reporting on a near-monthly basis thereafter.

24. Despite these repeated complaints, Ignacak and Defendant failed to take any meaningful or effective remedial action to address or curtail Eric's behavior.

25. To the contrary, Ignacak seemed annoyed by Plaintiff's reports and began to treat Plaintiff as "the problem."

26. Eric's harassment was permitted to continue unabated, creating an intimidating, hostile, and offensive work environment for Plaintiff.

### Death Threat

27. In February 2026, Eric's behavior escalated to a new and dangerous level.

28. Eric told another Subway employee, Amanda (last name unknown), that if he ever saw Plaintiff in public, he would "run her over with his car" and continue to "stomp her to death" if the impact of the car did not end her life first.

29. Amanda disclosed the threat to Plaintiff, and Plaintiff immediately reported the death threat to Ignacak's superior, General Manager Tina (last name unknown) ("Tina").

30. While Tina changed Eric's scheduled shift to end at 4:00 p.m., thereby limiting his interaction with Plaintiff to only shift changes, she did not reprimand or terminate Eric for threatening Plaintiff's life.

31. Shockingly, Tina reprimanded Amanda for disclosing the threat to Plaintiff, telling Amanda "we're all adults here," as if she was merely spreading gossip.

### Retaliation and Adverse Employment Actions

32. In early February 2025, Ignacak drastically reduced Plaintiff's hours from her typical 30 hours per week to just under 12 hours per week in retaliation for Plaintiff's complaints

of sexual harassment.

33. This severe reduction in hours has persisted, effectively crippling Plaintiff's income.

34. Ignacak made her hostility toward Plaintiff clear, telling other employees they "*don't have to work*" when Plaintiff is present and that she hopes Plaintiff will "*get tired of doing all the work and quit.*"

35. Ignacak wrote up Plaintiff, accusing her of "stealing" for giving her free employee meal—a benefit earned for working a five-hour shift—to her son, despite this being a common practice that other employees regularly engaged in without discipline.

36. Ignacak also wrote up Plaintiff based on an alleged "huge customer complaint," but offered no evidence of the complaint's existence, a departure from the standard practice of posting such complaints publicly.

37. Ignacak began to intensively supervise Plaintiff, standing near Plaintiff and watching her for the entire duration of her shift while not providing the same level of attention to any of Plaintiff's coworkers.

38. In or around May 2025, Ignacak adjusted Plaintiff's working schedule so that Plaintiff exclusively worked evening shifts beginning at 4:00 p.m., intentionally ensuring Ignacak no longer had to see or interact with Plaintiff.

39. Defendant hired another sandwich artist to replace Plaintiff on the daylight shift. However, this new employee had frequent attendance issues and called off almost weekly.

40. Even so, Ignacak refused to allow Plaintiff to fill in on the daylight shift, despite Plaintiff living directly across the street from the Facility and being able to report at almost any given time.

41. By February 2026, as a direct result of Eric's threat, Plaintiff's hours were further reduced to only 9 hours per week.

42. Most, if not all, sandwich artist shifts are scheduled in 5-hour increments, yet Plaintiff was only scheduled for 3 hours at a time.

### Age Discrimination

43. Plaintiff is 50 years old and is a member of the class of individuals protected by the ADEA.

44. Ignacak cultivated a toxic, clique-like environment, systematically favoring younger employees while targeting Plaintiff.

45. Ignacak gave preferential treatment and more hours to younger employees like Hailey (age in her thirties) and Taniah (age in her twenties, Ignacak's family member), while simultaneously stripping hours from Plaintiff.

### Wage and Hour Violations

46. Throughout Plaintiff's employment, Defendant automatically deducted 15 minutes of pay from every employee, for every shift worked, for a "break."

47. However, Plaintiff has never taken or been provided with such a break.

48. Plaintiff worked no fewer than 475 shifts between her initial start date and February 2026, resulting in 118.75 hours of unpaid time, totaling $1,270.63 in owed wages.

49. During each shift, the sandwich artists earned approximately $25.00 in tips, which should have been split evenly between the two sandwich artists working the shift, entitling Plaintiff to $12.50 per shift.

50. Despite being a manager, Ignacak took half of the cash tips given by customers to the sandwich artists on a daily basis, leaving only $12.50 to split between the two sandwich artists.

51.     This practice occurred during each of Plaintiff's shifts from May 2024 through approximately June 2025, at which point the tip jar was taken away entirely following Plaintiff's complaints.

52.     This equates to no less than $1,712.50 in tips stolen by Ignacak and owed to Plaintiff.

## COUNT I
### SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e *et seq.*

53.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

**A.     Elements of Hostile Work Environment.**

54.     To establish a hostile work environment claim under Title VII, a plaintiff must show that: (1) the employee was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) employer liability." See *Wyatt v. Nissan N. Am., Inc.,* 999 F.3d 400, 411 (6th Cir. 2021).

55.     A hostile work environment exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted).

56.     The conduct must be both objectively and subjectively offensive, such that "a reasonable person would find [it] hostile or abusive" and the victim in fact perceived it to be so. *Id.* at 21-22.

57.     Harassment creates a hostile work environment "[w]hen the workplace is

permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

**B.      Plaintiff Belongs to a Protected Class and Suffered Unwelcome Sexual Harassment Because Of Her Sex.**

58.     Because the Plaintiff is a woman, she is a member of a protected class.

59.     Beginning in September 2024, Plaintiff was subjected to severe and pervasive unwelcome sexual harassment by her coworker, Eric, based on her sex.

60.     Eric's conduct included attempting to walk in on Plaintiff while she was using the restroom, making sexually suggestive comments such as asking if he could "help" or "come with" her to the bathroom, and making other unwelcome remarks and physical advances.

61.     This harassment was not an isolated incident but a continuous pattern of behavior that persisted throughout Plaintiff's employment.

62.     Plaintiff immediately rejected Eric's advances and explicitly told him to stop his harassing conduct.

63.     Plaintiff did not welcome, invite, or consent to Eric's harassment at any time.

64.     The harassment was explicitly based on Plaintiff's sex, and the harassment would not have occurred but for Plaintiff's sex.

**C.      The Harassment Endured Was Severe and Pervasive and Created A Hostile Work Environment.**

65.     The harassment Plaintiff endured was both severe and pervasive, sufficient to alter the conditions of her employment and create an abusive working environment.

66.     Eric's conduct was frequent, occurring on a near-continuous basis from September

2024 through February 2026.

67. The conduct was physically threatening and humiliating, including invasions of Plaintiff's privacy in the restroom and sexually explicit comments.

68. In February 2026, Eric's behavior escalated to an extreme level when he threatened to "*run [Plaintiff] over with his car*" and "*stomp her to death*" if the impact of the car did not kill her.

69. This death threat caused Plaintiff to become terrified and unreasonably interfered with her work performance and emotional well-being.

70. A reasonable person in Plaintiff's circumstances would find this pattern of sexual harassment and violent threats to be hostile, abusive, and intolerable.

**D.      Employer Liability - Negligence and Deliberate Indifference.**

71. Under Title VII, an employer may be held liable for coworker harassment where the employer knew or should have known of the harassment and failed to take prompt, appropriate remedial action. See *Doe v. City of Detroit*, F.4th 294, 301 (6th Cir. 2021).

72. Plaintiff immediately reported Eric's harassment to her direct supervisor, Manager Veronica Ignacak, in September 2024.

73. Plaintiff made numerous subsequent reports to Ignacak throughout the fall of 2024 and continued reporting on a near-monthly basis thereafter.

74. Despite these repeated complaints, Defendant, through Ignacak and General Manager Tina, demonstrated deliberate indifference by failing to take any meaningful or effective remedial action.

75. Defendant had prior knowledge of Eric's propensity for sexual harassment, as another female employee, Remy, was forced to quit her job due to Eric's sexual harassment after her mother's complaints to Ignacak also went unaddressed.

10

76.     Even after Plaintiff reported Eric's February 2026 death threat to General Manager Tina, Defendant failed to discipline or terminate Eric, instead merely changing his shift schedule.

77.     Tina shockingly reprimanded the witness, Amanda, for disclosing the threat to Plaintiff, demonstrating Defendant's pattern of protecting the harasser rather than the victim.

78.     Defendant's failure to take prompt, effective corrective action allowed Eric's harassment to continue unabated and created an environment where Plaintiff feared for her safety.

79.     Defendant's deliberate indifference to Plaintiff's complaints and the known danger posed by Eric establishes employer liability for the hostile work environment.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant on Count I and award Plaintiff: (i) Compensatory damages for past and future emotional distress, humiliation, and mental anguish; (ii) Punitive damages; (iii) Back pay and front pay; (iv) Injunctive relief, including but not limited to appropriate policies and training to prevent future harassment; (v) Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); (vi) Pre-judgment and post-judgment interest; and (vii) Such other and further relief as this Court deems just and proper.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-3(a)**

80.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

**A.      Elements of Retaliation Claim.**

81.     To establish a prima facie retaliation claim under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer knew of the protected activity; (3) the employer took an adverse employment action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. See *Laster v. City of Kalamazoo*, 746

F.3d 714, 730 (6th Cir. 2014).

82. Title VII's anti-retaliation provision has a broader scope than its discrimination provisions, as any action that might deter a reasonable employee from complaining can be actionable. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

83. An employee engages in protected activity when she opposes any practice made unlawful by Title VII, which includes complaining about sexual harassment. See *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir.2014).

**B.     Plaintiff Engaged In A Protected Activity and Defendant Was Aware.**

84. Plaintiff engaged in protected activity by immediately reporting Eric's sexual harassment to Manager Veronica Ignacak in September 2024.

85. Plaintiff made numerous subsequent reports to Ignacak throughout September, October, and November 2024, and continued reporting on a near-monthly basis thereafter.

86. Plaintiff's complaints about Eric's sexually harassing conduct constitute protected activity under Title VII.

87. Defendant, through Ignacak and General Manager Tina, had actual knowledge of Plaintiff's protected complaints.

**C.     Defendant Took Multiple Adverse Employment Actions Against Plaintiff.**

88. In early February 2025, Ignacak drastically reduced Plaintiff's hours from her typical 30 hours per week to just under 12 hours per week.

89. This severe reduction in hours materially adversely affected Plaintiff's compensation and terms and conditions of employment.

90. Ignacak wrote up Plaintiff based on an alleged "huge customer complaint," but offered no evidence of the complaint's existence.

91. Ignacak wrote up Plaintiff for "stealing" for giving her employee meal to her son,

12

despite this being a common practice other employees engaged in without discipline.

92. Ignacak began to intensively supervise Plaintiff, standing near her for entire shifts while not providing the same level of attention to other employees.

93. In or around May 2025, Ignacak adjusted Plaintiff's schedule to exclusively evening shifts beginning at 4:00 p.m., intentionally ensuring Ignacak no longer had to interact with Plaintiff.

94. Ignacak refused to allow Plaintiff to fill in on daylight shifts despite staffing shortages and Plaintiff living across the street from the Facility.

95. By February 2026, Plaintiff's hours were further reduced to only 9 hours per week.

96. Plaintiff was scheduled for only 3-hour shifts, whereas other sandwich artists were scheduled for 5-hour shifts.

**D.      There Was a Causal Connection Between Plaintiff's Protected Activity and the Adverse Actions.**

97. A causal connection exists between Plaintiff's protected complaints and the adverse employment actions taken against her.

98. The temporal proximity between Plaintiff's September 2024 complaints and the February 2025 hours reduction is strong evidence of retaliatory intent.

99. Ignacak told other employees she hopes Plaintiff will "get tired of doing all the work and quit," which is direct evidence of retaliatory intent.

100. The progressive nature of the retaliation—starting with hours reduction in February 2025 and escalating over time—demonstrates a pattern of retaliatory conduct.

101. Defendant's failure to take effective remedial action, combined with the escalating adverse actions against Plaintiff, evidences a retaliatory motive.

13

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant on Count II and award Plaintiff: (i) Compensatory damages for past and future emotional distress, humiliation, and mental anguish; (ii) Punitive damages; (iii) Back pay and front pay; (iv) Injunctive relief, including but not limited to appropriate policies and training to prevent future retaliation; (v) Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); (vi) Pre-judgment and post-judgment interest; and (vii) Such other and further relief as this Court deems just and proper.

**COUNT III**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA**
**29 U.S.C. § 621 *et seq.***

102.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

103.    The Age Discrimination in Employment Act ("ADEA") was enacted in 1967 to prohibit employment discrimination against individuals who are at least 40 years of age. 29 U.S.C. § 621.

104.    The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

105.    To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate that: (1) she was at least 40 years old; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by or treated less favorably than a substantially younger employee. See *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012).

**A.    Plaintiff is a Member of a Protected Class Under the ADEA.**

106.    Plaintiff was born in 1976 and is 50 years old, placing her squarely within the class

14

of individuals protected by the ADEA.

107.     Accordingly, Plaintiff satisfies the first element of her *prima facie* case.

**B.     Plaintiff Was Qualified for Her Position and Performed Her Job Satisfactorily.**

108.     As averred hereinabove, Plaintiff was a diligent and capable employee who consistently performed her duties as a Sandwich Artist.

109.     Plaintiff's duties included preparing sandwiches, providing customer service, stocking supplies, performing cleaning tasks, and other food preparation duties.

110.     Plaintiff was qualified to perform the essential functions of her position and did so competently throughout her employment.

**C.     Plaintiff Suffered Adverse Employment Actions.**

111.     As set forth in detail above, Plaintiff suffered numerous adverse employment actions, including the drastic reduction of her hours from approximately 30 hours per week to just under 12 hours per week in early February 2025, and further reduction to only 9 hours per week by February 2026.

112.     Plaintiff was also subjected to pretextual disciplinary write-ups, intensive and unequal supervision, and discriminatory scheduling practices that confined her to evening shifts while denying her daylight hours.

113.     These actions materially adversely affected Plaintiff's compensation and terms and conditions of employment.

**D.     More Favorable Treatment of Younger Employees**

114.     Ignacak cultivated a toxic, clique-like environment, systematically favoring substantially younger employees while targeting Plaintiff for adverse treatment.

115.     Ignacak gave preferential treatment and more hours to younger employees, including Hailey, who is in her thirties, and Taniah, who is in her twenties and is Ignacak's family

15

member.

116. While Plaintiff's hours were progressively reduced, these substantially younger employees received more favorable scheduling and greater hours.

117. This pattern of favoring substantially younger employees over Plaintiff, who is 50 years old, constitutes compelling circumstantial evidence that age was a motivating factor in the adverse employment actions taken against Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant on Count III and award Plaintiff: (i) Compensatory damages for past and future emotional distress, humiliation, and mental anguish; (ii) Liquidated damages pursuant to 29 U.S.C. § 626(b); (iii) Back pay and front pay; (iv) Injunctive relief, including but not limited to appropriate policies and training to prevent future age discrimination; (v) Attorneys' fees and costs pursuant to 29 U.S.C. § 626(b); (vi) Pre-judgment and post-judgment interest; and (vii) Such other and further relief as this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201, *et seq.*

118. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

**A. FLSA Coverage and Applicability.**

119. The FLSA mandates certain minimum rates of pay for time covered "employees" spend dedicated to workplace operations. 29 U.S.C. §§ 206, 207.

120. The minimum pay mandates are incumbent upon "employers" who through the course of their business practices are "engaged in commerce." 29 U.S.C. §§ 203(d), (s)(1).

121. The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

16

122. Defendant is an "employer" engaged in interstate commerce and covered by the FLSA.

123. Plaintiff was a non-exempt "employee" within the meaning of the FLSA and was entitled to all protections afforded by the statute, including the right to be compensated for all hours worked. 29 U.S.C. § 203(e).

124. As such, Defendant was required to compensate Plaintiff for all hours actually worked and to comply with the FLSA's provisions governing minimum wage and tip credit requirements.

**B.      Defendant Committed Unlawful Break Deductions.**

125. Throughout Plaintiff's employment, Defendant automatically deducted 15 minutes of pay from every employee, for every shift worked, for a "break."

126. However, Plaintiff has never taken or been provided with such a break.

127. From May 2024 until February 2026, Plaintiff worked no fewer than 475 shifts, consisting of: (a) 258 shifts from May 2024 until February 2025 (6 shifts per week x 43 weeks); (b) 208 shifts from February 2025 until February 2026 (4 shifts per week x 52 weeks); and (c) 9 shifts in February 2026 (3 shifts per week x 3 weeks).

128. With 15 minutes being wrongfully deducted for each shift, Plaintiff has not been compensated for 118.75 hours.

129. At Plaintiff's rate of $10.70 per hour, Defendant owes Plaintiff $1,270.63 in unpaid wages resulting from these unlawful break deductions.

130. These automatic break deductions without actual breaks provided violate the FLSA's compensable time requirements, as Plaintiff was required to be completely relieved from duty for such breaks to be unpaid. 29 U.S.C. § 206.

17

**C.      Defendant Committed Unlawful Tip Misappropriation.**

131.    During each shift, the sandwich artists earned approximately $25.00 in tips, which should have been split evenly between the two sandwich artists working the shift, entitling Plaintiff to $12.50 per shift.

132.    Despite being a manager and ineligible to participate in a tip pool, Manager Veronica Ignacak took half of the cash tips given by customers to the sandwich artists on a daily basis, leaving only $12.50 to split between the two sandwich artists.

133.    This practice occurred during each of Plaintiff's shifts from May 2024 through approximately June 2025, totaling no fewer than 274 shifts.

134.    As a result of Ignacak's misappropriation of tips, Plaintiff was deprived of $6.25 per shift in tips that rightfully belonged to her.

135.    This equates to no less than $1,712.50 in tips stolen by Ignacak and owed to Plaintiff ($6.25 per shift x 274 shifts).

136.    Under the FLSA, tips are the property of the employee and managers may not participate in tip pools or share in employees' tips, even when the employer is not taking a tip credit. 29 U.S.C. § 203(m).

137.    Defendant's practice of allowing Manager Ignacak to systematically misappropriate Plaintiff's tips violates the FLSA's tip credit provisions. 29 U.S.C. § 203(m).

**D.      Willfulness and Liquidated Damages.**

138.    Defendant's violations of the FLSA were willful, as Defendant had knowledge of or showed reckless disregard for the FLSA's requirements.

139.    Defendant knew or should have known that automatically deducting break time without providing actual breaks violated the FLSA's compensable time requirements.

140.    Defendant knew or should have known that allowing a manager to misappropriate

18

employees' tips violated the FLSA's tip credit provisions.

141.    29 U.S.C. § 216(b) of the FLSA provides that when an employer violates the FLSA, an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

142.    An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. See *Commissioner v. Schleier*, 515 U.S. 323, 331, 115 S.Ct. 2159, 132 L.Ed.2d. 294 (1995).

143.    As Defendant violated the FLSA, it is liable to Plaintiff for liquidated damages equal to 100% of the unpaid wages ($2,983.13), as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant on Count IV and award Plaintiff: (i) Unpaid wages in the amount of $2,983.13 ($1,270.63 in unlawful break deductions plus $1,712.50 in unlawfully misappropriated tips); (ii) Liquidated damages in an amount equal to the unpaid wages ($2,983.13) pursuant to 29 U.S.C. § 216(b); (iii) Attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b); (iv) Pre-judgment and post-judgment interest; and (v) Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

144.    Plaintiff requests a trial by jury on all matters so triable.

Date: March 18, 2026

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

By: */s/ Patrick W. Carothers*
Patrick W. Carothers, Esq. (Pa. I.D. No. 85721)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.991.7510
patrick@workersrightslawgroup.com

*Counsel for Plaintiff, Neva Justice*

20